UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 1 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-556-GWU

RICKY R. WHITEHEAD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his multiple applications for Disability Insurance Benefits (DIB) and one application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Whitehead

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Whitehead

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Whitehead

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Whitehead, a 49 year-old former coal miner with a seventh grade education, suffered from impairments related to coal worker's pneumoconiosis, lupus, polyarthritis with chronic pain, a hearing loss, borderline intelligence and a depressive disorder. (Tr. 343, 347). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 350-351). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 351). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 349).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Daryl Martin included an exertional limitation to light level work along with such non-exertional restrictions as (1) an inability to stand or walk for more than two hours in an eight-

7

hour day; (2) an inability to sit for more than six hours in an eight-hour day in two-hour intervals; (3) an inability to more than occasionally push or pull with the upper and lower extremities; (4) an inability to more than occasionally stoop, kneel, crouch, crawl or climb ramps and stairs; (5) an inability to ever climb ropes, ladders or scaffolds; (6) an inability to reach bilaterally in all directions on more than an occasional basis; (7) a need to avoid all exposure to extreme cold, humidity and vibration; (8) a need to avoid moderate exposure to dust, fumes or gases with a need for a clean air environment; (9) an inability to work in a loud noise environment; (10) a limitation to work involving short, simple instructions which have been demonstrated or presented orally; (11) an inability to read above the first grade level or perform math above the second grade level; (12) the ability to sustain attention and concentration to complete simple, repetitive tasks. (Tr. 413-414, 435). In response, the witness identified a significant number of sedentary level jobs which could still be performed. (Tr. 415, 435-436). Therefore, assuming that the vocational factors considered by Martin fairly depicted Whitehead's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. The question was essentially compatible with the opinion of Dr. Divyesh Bhakta (Tr. 288-289), an examining consultant, who opined that the plaintiff would only be restricted in endurance and walking as well as a mild to moderate hearing loss. (Tr. 288-289). Dr. Glen Baker, another examiner, only restricted the plaintiff from returning to coal mining or other dusty work activity, a finding also consistent with the administrative

8

decision. (Tr. 176). Neither Dr. Diosdado Irlandez (Tr. 296) nor Dr. Gary Higgason (Tr. 297), each a non-examining medical reviewer, even thought that the claimant suffered from a "severe" physical impairment. Lesser physical restrictions were found by Medical Reviewers Jorge Baez-Garcia (Tr. 594-602) and Humilidad Anzures (Tr. 621-627). These reports provide substantial evidence to support the administrative decision.

Dr. Roy Varghese, Whitehead's treating physician at Mary Breckinridge Healthcare, identified far more severe physical restrictions in April of 2002 (Tr. 318-321) and again in May of 2005 (Tr. 332-334). When these restrictions were presented to Martin, he reported that no jobs would be available. (Tr. 436-437).

The ALJ rejected Dr. Varghese's opinion as binding. (Tr. 348). Among the reasons cited for this action by the ALJ were the inconsistencies between the plaintiff's activities and the severe restrictions. Dr. Varghese indicated that Whitehead could not sit for longer than 20 minutes at a time. (Tr. 318, 333). Yet, despite this alleged restriction, the ALJ observed that the plaintiff had been able to sit throughout the 75-minute hearing. (Tr. 348). While Dr. Varghese reported a positive rheumatoid factor and a positive ANA (Tr. 585, 840), the physician did not indicate abnormal physical examination results (Tr. 299-311, 322-325, 585-593, 651, 838-855). Physical examination by Dr. Jaya Pampati of the Arthritis and Osteoporosis Center revealed that sensation to touch and proprioception was normal and that the claimant had no pathological reflexes. (Tr. 644). Peripheral joint examination revealed no evidence of acute or active synovitis. (Tr. 644). Dr. Pampati opined that Whitehead did not suffer from any acute or active connective tissue disease. (Tr. 644). Dr. Bhakta noted no sign of joint

9

Whitehead

abnormalities. (Tr. 288). As previously noted, no other physician of record imposed such severe limitations as Dr. Varghese. Therefore, under these circumstances, the Court finds that the ALJ properly rejected Dr. Varghese's opinion as binding.

The ALJ dealt properly with the evidence of record relating to Whitehead's mental status. Psychologist James Leisenring examined the plaintiff and opined that he would be "moderately limited" in his ability to handle instructions. (Tr. 317). Dr. Robert Eardley, another examiner, specifically reported that the ability to handle instructions was intact. (Tr. 786). The hypothetical question was essentially consistent with these opinions. The claimant sought treatment for his mental problems at Kentucky River Community Care where he was diagnosed as suffering from a dysthymic disorder. (Tr. 809). Specific mental restrictions were not identified but the ALJ rated the claimant's Global Assessment of Functioning (GAF) at 70. (Tr. 809). Such a GAF suggests the existence of only "mild" psychological symptoms, compatible with those included in the hypothetical question according to the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th Ed.-Revised, 1994). Psychologists Edward Ross (Tr. 603) and Lea Perritt (Tr. 628) reviewed the record and each opined that Whitehead's mental problems were not "severe." While reviewers Stephen Scher (Tr. 788-804) and Laura Cutler (Tr. 813-819) each found the plaintiff's mental problems to be "severe," the ALJ's hypothetical question was arguably consistent with their limitations. Therefore, substantial evidence supports this portion of the ALJ's decision.

10

Whitehead asserts that the ALJ erred by failing to address the opinion of Vocational Expert William Ellis that no jobs would be available to him. Ellis performed a vocational evaluation at the request of the plaintiff's representative and concluded that he was 100 percent vocationally disabled. (Tr. 752-754). Ellis appears to have credited the findings of Dr. Varghese which the Court has already found not to have been binding on the ALJ and not to have considered the hypothetical question formulated by the ALJ which the undersigned found did fairly characterize Whitehead's condition. Even if he had considered the same hypothetical and reached a difficult conclusion, his opinion was still offset by that of Martin whose opinion the ALJ could reasonably rely upon. Therefore, under these circumstances, the undersigned finds any error to have been harmless.

Whitehead argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Whitehead was found to be suffering from a potentially painful condition. However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. First, the medical evidence does not appear sufficient to confirm the severity of the alleged pain. Second, objective medical

11

Whitehead

evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Whitehead's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the __//__ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE